**UNITED STATES FEDERAL COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO.: 3:23-cv-1504**

SANDY L. KETCHEN, III,
An individual,

Plaintiff,
vs.

DRJ GAINESVILLE K, LLC,
d/b/a JENKINS KIA OF GAINESVILLE,
a Florida Limited Liability Company, and
ALLY FINANCIAL, INC.,
a Foreign Profit Company.

Defendant(s).
_________________________________/

**COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF**

Plaintiff, SANDY L. KETCHEN, III, an individual, hereby sues Defendants, DRJ GAINESVILLE K, LLC, d/b/a JENKINS KIA OF GAINESVILLE, a Florida for-Limited Liability Company, and ALLY FINANCIAL, INC., a Foreign Profit Company, and alleges:

**Jurisdiction**

1. This Court has jurisdiction under the Federal Odometer Act, 49 U.S.C. §32710 and 28 U.S.C. §§1331 and 1337, and has pendant jurisdiction over state claims under 28 U.S.C. §1367.

**Allegations as to Parties**

2. At all times material hereto, DRJ GAINESVILLE K, LLC, ("**Dealership**") was licensed by the State of Florida as a dealer conducting new and used automobile sales in Alachua County, Florida.

3. ALLY FINANCIAL, INC. ("**Holder**" or "**Lender**") is a Foreign Profit Company authorized to do business in Florida as a lender and a "sales finance company" as defined in Fla. Stat. § 520.02(19) and is a "holder" of a "retail installment contract" as defined in Fla. Stat. § 520.02(8).

4. At all times material hereto, the Dealership was a "dealer" as said term is defined under 49 U.S.C. §32702(2) and Florida Statute §320.77(1)(a) and a "transferor" as said term is defined under 49 C.F.R. §590.3.

5. At all times material hereto, Plaintiff was *sui juris* and a resident of Duval County, Florida. Plaintiff is a "transferee" as said term is defined under 49 C.F.R. §580.3.

**Factual Allegations Common to All Counts**

6. On or about October 6, 2022, Plaintiff went to the Dealership to purview used automobiles with the intent of purchasing a vehicle for personal and household use.

7. In the course of the initial discussion with the Dealership's salesperson, Plaintiff advised the Dealership's salesperson that he needed reliable transportation for personal and household purposes.

8. Plaintiff was directed by the Dealership to consider a 2020 Ford Fusion, with a Vehicle Identification Number of 3FA6P0K99LR174256 (hereinafter the "**Vehicle**") which the Dealership represented was recently traded-in by its prior owner.

9. In addition, the Dealership orally represented that the Vehicle was in excellent mechanical condition, well maintained and free of any collision related damage ("**Condition Representation**").

10. As finances were tight having recently completed a bankruptcy plan, Plaintiff was concerned about future costs of repairs which ultimately influenced his decision to purchase a late model vehicle with low mileage.

11. Plaintiff relayed his concerns about future repair costs to the salesperson assisting with the transaction who advised that Plaintiff could purchase an extended service contract at an additional cost that would cover any such repairs.

12. Having detrimentally relied upon on the Condition Representation and material non-disclosures as further discussed *infra*, Plaintiff agreed to purchase the Vehicle.

13. Plaintiff opted to finance the purchase of the Vehicle and had the Dealership originate a retail installment sales contract to obtain financing through Lender ("**RISC**").

14. A true and correct copy of the RISC is attached hereto and incorporated

herein by reference as Exhibit "A."

15. Pursuant to the RISC, after applying his down-payment of One Thousand and 00/100ths Dollars, Plaintiff financed Twenty-Four Thousand Six Hundred Eighty-Eight and 34/100ths ($24,688.34) Dollars.

16. After Plaintiff completed the transaction to purchase and finance the Vehicle, Plaintiff took possession of the Vehicle upon the belief that he purchased reliable transportation for family and household purposes.

17. Unbeknownst to the Plaintiff, at the time of the purchase of the Vehicle, the Vehicle had been previously titled in the name of EAN Holdings, LLC ("**EAN**") and had been used in a daily rental car fleet under short term rentals.

18. Contrary to the requirements of Florida Statute §319.14, the Dealership knowingly and intentionally failed to affirmatively disclose the prior use of the Vehicle as a daily rental car at any time prior to its sale to Plaintiff.

19. Further, contrary to the requirements of Florida Statute §319.14, the Dealership knowingly and intentionally failed to obtain a title branded with the Vehicle's prior use as a short-term lease vehicle in EAN's rental car fleet.

20. Following the consummation of the transaction, Dealership assigned the RISC to Lender upon unknown terms and for unknown consideration.

21. Shortly after consummating the transaction, the Vehicle began to experience anomalies that were not germane to a newer model, low-mileage vehicle.

22. Pursuant to the terms of the extended service contract, Plaintiff contacted the Dealership expressing the need for repair assistance.

23. Despite repeated attempts to schedule an appointment, Dealership refused to address the concerns of Mr. Ketchen and ignored his requests.

24. Specifically, Mr. Ketchen observed abnormally loud noise emanating from the rear-end of the Vehicle.

25. In addition, the Vehicle would also cause tires to degrade rapidly due to uneven wear.

26. In November of 2022, Mr. Ketchen was involved in a minor rear-end accident and as a result, he delivered the Vehicle to a local Ford dealership for repairs.

27. Much to the utter shock and dismay of the Plaintiff, he was subsequently informed that the Vehicle had significant frame damage which prevented the Vehicle from being properly repaired.

28. As a part of the due diligence of Plaintiff in the preparation of the instant lawsuit, Plaintiff obtained the title history for the Vehicle from the Florida Department of Motor Vehicles ("Title History").

29. Upon review of the Title History, the Plaintiff was able to discern for the first time that the Vehicle had been previously used as a short-term lease vehicle in the EAN rental car fleet prior to the Plaintiff's purchase of the same.

30. In preparation for the instant suit, undersigned counsel for Plaintiff drafted and timely delivered a demand letter pursuant to Fla. Stat. §501.98 to the Dealership in excess of thirty (30) days prior to the filing of the instant suit.

31. In addition, Plaintiff delivered notice of his intent to revoke acceptance of the Vehicle.

32. Dealership failed to respond to the aforementioned correspondences or otherwise afford any relief to the Plaintiff.

33. Accordingly, all conditions precedent to bringing this action have occurred, have been performed, or have been waived.

34. Had the Plaintiff known the true history of the Vehicle's prior status as a short-term rental vehicle or true mechanical condition, he would have not purchased the Vehicle or paid significantly less for it.

35. The Plaintiff's actual damages include, but are not limited to, paying substantially more for the Vehicle than it was worth, abnormally high maintenance costs for the Vehicle due to the prior rental usage and alternate transportation costs.

**Assignee Liability**

36. Pursuant to 16 C.F.R. § 433, known more commonly as the "Federal Trade Commission Rule Regarding the Preservation of Consumer Claims and Defenses" or the "FTC Holder Rule" ("FTC Holder Rule"), Lender, as the assignee of the RISC, is subject to all claims and defenses of Plaintiff as a consumer and

which are available against the Dealership as the credit-seller.

37. In compliance with the FTC Holder Rule, the RISC bears the following conspicuous language:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER

38. Furthermore, Florida Statue § 516.31(2), known more commonly as the "Florida Holder Rule," provides in pertinent part the following:

> (2) Restriction on Certain Negotiable Instruments and Installment Contracts - A holder or assignee of any negotiable instrument or installment contract, other than a currently dated check, which originated from the purchase concerning consumer goods or services is subject to all claims or defenses of the consumer debtor against the seller of those consumer goods or services. A person's liability under this section may not exceed the amount owing to the person when that claim or defense is asserted against the person.

39. Pursuant to the FTC Holder Rule and the Florida Holder Rule, Plaintiff seeks recovery from Lender pursuant to a theory of derivative liability, for Dealership's transgressions as further set forth herein.

40. Specifically, Plaintiff seeks restitution of all installment payments made in furtherance of the RISC, rescission of the transaction in full and damages

up to and including the present balance of indebtedness under the RISC.

41. Plaintiff avers that his claim is so large that it exceeds the remainder of any debt owed to Lender under the RISC.

**COUNT I**
**ACTION FOR VIOLATION OF THE FEDERAL ODOMETER ACT**
**(Dealership and Holder)**

42. Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 41 above as if set forth hereat in full.

43. At all times material hereto, Plaintiff was a "transferee" as said term is defined 49 C.F.R. §580.30.

44. At all times material, the Dealership was a "dealer" as said term is defined under 49 U.S.C. §32702(2) and a "transferor" as defined by 49 C.F.R. §580.30.

45. At all times material hereto, the Vehicle was a "motor vehicle" as said term is defined under 49 U.S.C. §32101(7).

46. The Dealership failed to provide Plaintiff with the actual title certificate for the Vehicle, for their examination and signature, as required by 49 U.S.C. §32705 and 49 C.F.R. §580.5.

47. The title certificate for the Vehicle clearly designated the Vehicle as a daily rental vehicle owned by EAN.

STATE OF FLORIDA — LIEN SATISFACTION

Mail Lien Satisfaction to: Dept of Highway Safety and Motor Vehicles, Neil Kirkman Building, Tallahassee, FL 32399-0500

164951
7T5YYK-LR174256-164951

| Identification Number | Year | Make | Body | WT-L-BHP | Vessel Regis. No. | Title Number |
|---|---|---|---|---|---|---|
| [redacted]4256 | 2020 | FORD | 4D | 3573 | | 137717521 |

Date of Issue 02/10/2020

Registered Owner:

EAN HOLDINGS, LLC
14002 E 21ST ST STE 1500
TULSA OK 74134-1424

Mail To:

EAN HOLDINGS, LLC
14002 E 21ST ST STE 1500
TULSA OK 74134-1424

Title ______
Date ______

IMPORTANT INFORMATION

1. When ownership of the vehicle described herein is transferred, the seller MUST complete in full the Transfer of Title by Seller section at the bottom of the certificate of title.
2. Upon sale of this vehicle, the seller must complete the notice of sale on the reverse side of this form.
3. Remove your license plate from the vehicle.
4. See the web address below for more information and the appropriate forms required for the purchaser to title and register the vehicle, mobile home or vessel: http://www.flhsmv.gov/html/titlinf.html

# CERTIFICATE OF TITLE

| Identification Number | Year | Make | Body | WT-L-BHP | Vessel Regis. No. | Title Number |
|---|---|---|---|---|---|---|
| 3FA6P0K99LR174256 | 2020 | FORD | 4D | 3573 | | 137717521 |

| Prev State | Color | Primary Brand | Secondary Brand | No of Brands | Use | Prev Issue Date |
|---|---|---|---|---|---|---|
| N | GRY | | | | LEASE | |

| Odometer Status or Vessel Manufacturer or OH use | Hull Material | Prop | Date of Issue |
|---|---|---|---|
| 10 MILES 01/20/2020 ACTUAL | | | 02/10/2020 |

Lien Release
Interest in the described vehicle is hereby released
By ______
Title ______
Date ______

Registered Owner

EAN HOLDINGS, LLC
14002 E 21ST ST STE 1500
TULSA OK 74134-1424

1st Lienholder

NONE

DIVISION OF MOTORIST SERVICES — TALLAHASSEE — FLORIDA — DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES

Robert R. Kynoch, Director — Control Number 145131066 — Terry L. Rhodes, Executive Director

TRANSFER OF TITLE BY SELLER (This section must be completed at the time of sale.)

Federal and/or state law require that the seller state the mileage, purchaser's name, selling price and date sold in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

This title is warranted to be free from any liens except as noted on the face of the certificate and the motor vehicle or vessel described is hereby transferred to:

Seller Must Enter Purchaser's Name: Multinational Sales Leasing Corp Address: 59 W. Iliana St - Orl Fl 32806

Seller Must Enter Selling Price: ______ Seller Must Enter Date Sold: 5-3-22

I/We state that this ☐ 5 or ☐ 6 digit odometer now reads 52989 (no tenths) miles, date read 5-3-22 and I hereby certify that to the best of my knowledge the odometer reading: ☐ 1. reflects ACTUAL MILEAGE. ☐ 2. is IN EXCESS OF ITS MECHANICAL LIMITS. ☐ 3. is NOT THE ACTUAL MILEAGE.

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

SELLER Must Sign Here: [signature] EAN HOLDINGS LLC Kayson Johnson as Agent — CO-SELLER Must Sign Here: ______
Print Here: ______ — Print Here: ______
Selling Dealer's License Number: ______ Tax No.: ______ Tax Collected: ______
Auction Name: ______ License Number: ______

PURCHASER Must Sign Here: [signature] — CO-PURCHASER Must Sign Here: ______
Print Here: Mosely Fernandez — Print Here: ______

NOTICE: PENALTY IS REQUIRED BY LAW IF NOT SUBMITTED FOR TRANSFER WITHIN 30 DAYS AFTER DATE OF PURCHASE

HSMV 82250 (REV. 3/15) — STATE OF FLORIDA

48. A true and correct copy of the Title Certificate is attached hereto as Exhibit "B."

49. By not producing the Title Certificate for inspection and signature, the Dealership was able to hide from Plaintiff the facts related to the prior ownership of the Vehicle including the fact that the Vehicle was previously used as a short-term lease vehicle.

50. Instead of complying with the requirements of the Act, the Dealership required Plaintiff to sign, *inter alia,* a motor vehicle title reassignment supplement, and an application for certificate of title (hereinafter referred to collectively as the "Transfer Forms") which did not disclose the designation of the Vehicle as a daily rental car and the prior ownership by EAN.

51. To the contrary, the Dealership affirmatively represented that the Vehicle's branding and use designation was for "Private Use" on the application for certificate of title ("**Prior Use Representation**"):

| 3 | BRANDS, USAGE AND TYPE (Check Applicable Boxes) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ☐ SHORT TERM LEASE | ☐ LONG TERM LEASE | ☐ REBUILT | ☐ POLICE VEHICLE | ☒ PRIVATE USE | ☐ TAXI CAB | ☐ FLOOD | ☐ ILEV | ☐ CUSTOM |
| ☐ ASSEMBLED FROM PARTS | ☐ BONDED TITLE | ☐ KIT CAR | ☐ GLIDER KIT | ☐ MANUF. BUY BACK | ☐ REPLICA | ☐ AUTONOMOUS | ☐ ELECTRIC | ☐ STREET ROD |

52. True and correct copies of the Transfer Forms are attached hereto as Composite Exhibit "C".

53. The Dealership designed and employed this tactic of requesting Plaintiff to sign a power of attorney and other Transfer Forms instead of the actual title certificate as required under federal law with the specific intent of perpetuating a fraud and deception on Plaintiff.

54. As an experienced motor vehicle dealer, the Dealership knew or should

have known of the Act and its regulatory requirements regarding disclosures and deliberately and recklessly disregarded what the law required.

55. The Dealership deliberately deceived Plaintiff through the oral and written misrepresentations and non-disclosures referred to above.

56. The Dealership has violated the Act in that the Dealership made a false statement to a transferee in violation of 49 U.S.C. §32705(a) and 49 C.F.R. §580.4.

57. The Dealership violated the Act with the specific intent to defraud.

58. As a direct and proximate result of the violations of the Act, the Dealership is liable to Plaintiff in the sum of three times the actual damages or $10,000.00, whichever is greater.

59. Plaintiff has retained the undersigned counsel to represent his interest herein and is obligated to pay said counsel a reasonable fee for its services.

60. Pursuant to 49 U.S.C. §32710(b), Plaintiff is entitled to recover his reasonable attorneys' fees and court costs upon entry of judgment in his favor.

WHEREFORE, SANDY L. KETCHEN, III, an individual, demands judgment in his favor against Defendants, DRJ GAINESVILLE K, LLC, d/b/a JENKINS KIA OF GAINESVILLE, a Florida limited liability company, and ALLY FINANCIAL, INC., a Foreign Profit Company, jointly and severally, for damages, together with interest, court costs and attorneys' fees pursuant to 49 U.S.C. §32710(b).

**COUNT II**
**ACTION FOR FRAUD**
**(Dealership and Holder)**

61. Plaintiff realleges and reaffirms the allegations contained in Paragraphs 1 through 41 above as if set forth hereat in full.

62. As more particularly described above, the Dealership misrepresented material facts concerning the transaction to purchase and finance the Vehicle.

63. The Dealership omitted material facts by failing to disclose that the Vehicle had been previously used as a daily rental car.

64. The Dealership knew that the representations above were false, or made such representations recklessly, when the Dealership had no reasonable grounds for believing those representations were true.

65. The Dealership knew that the omissions concerning the Vehicle were material and important.

66. The Dealership intended to deceive Plaintiff and Plaintiff relied upon the misrepresentations and omissions to his detriment.

67. As a direct and proximate result of the fraud and non-disclosures by the Dealership, Plaintiff has been damaged.

WHEREFORE, SANDY L. KETCHEN, III, an individual, demands judgment for damages against Defendants, DRJ GAINESVILLE K, LLC, d/b/a JENKINS KIA OF GAINESVILLE, a Florida limited liability company, and ALLY

FINANCIAL, INC., a Foreign Profit Company, jointly and severally, together with costs.

**COUNT III**
**ACTION FOR FRAUDULENT INDUCEMENT**
**(As to Dealership and Holder)**

68. This is a claim for common law fraudulent inducement.

69. Plaintiff realleges and reaffirms the allegations contained in Paragraph 1 through 41 above as if set forth hereat in full.

70. As more particularly described above, Dealership induced Plaintiff into signing the RISC and consummating the transaction for the sale of the Vehicle by knowingly making misrepresentations of material fact and omitting material facts with the intent that Plaintiff rely on them to his detriment.

71. Dealership's misrepresentations of material fact and omissions of material fact were made and omitted with the intent that Plaintiff rely on them, or be deceived by them to his detriment.

72. Plaintiff justifiably relied upon the misrepresentations to his detriment and further, had Plaintiff been advised of the truth, Plaintiff would not have entered into the RISC.

73. As a result of the fraud and deceit by Dealership, the actual and economic damages of Plaintiff include but are not limited to the diminution in value of the Vehicle as a result of it having an inaccurate odometer and increased

maintenance costs associated with a vehicle of higher mileage.

WHEREFORE, SANDY L. KETCHEN, III, an individual, demands judgment for damages against Defendants, DRJ GAINESVILLE K, LLC, d/b/a JENKINS KIA OF GAINESVILLE, a Florida limited liability company, and ALLY FINANCIAL, INC., a Foreign Profit Company, jointly and severally, together with costs.

**COUNT IV**
**ACTION FOR BREACH OF EXPRESS WARRANTY**
**(As to Dealership and Holder)**

74. Plaintiff realleges and reaffirms the allegations contained in Paragraphs1 through 41 and 51-52 above as if set forth hereat in full.

75. From the various statements by Dealership, including the Condition Representation and Prior Use Representation, Dealership made an express warranty pursuant to Section 2-313 of the Uniform Commercial Code ("UCC") by both affirmation of fact or promise and by description of goods ("Express Warranty").

76. As evidenced by the title records and other evidence, Dealership has breached the Express Warranty.

77. As a direct and proximate result of the breach of the Express Warranty, Plaintiff has been damaged.

78. The damages of Plaintiff include but are not necessarily limited to the diminution in value of the Vehicle as a result of it having an inaccurate odometer

and increased maintenance costs associated with a vehicle of higher mileage.

WHEREFORE, SANDY L. KETCHEN, III, an individual, demands judgment for damages against Defendants, DRJ GAINESVILLE K, LLC, d/b/a JENKINS KIA OF GAINESVILLE, a Florida limited liability company, and ALLY FINANCIAL, INC., a Foreign Profit Company, jointly and severally, together with costs.

**COUNT V**
**ACTION FOR REVOCATION OF ACCEPTANCE**
**(Dealership and Holder)**

79. This is a claim for revocation of acceptance.

80. Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 41 above as if set forth hereat in full.

81. Plaintiff accepted the Vehicle without discovering the above-described mechanical defects and misrepresentations regarding the prior use history of the Vehicle because Plaintiff was reasonably induced to accept the Vehicle based on Dealer's misrepresentations and the difficulty of discovering the above facts.

82. Dealer refused and continues to refuse to correct the nonconformities present in the subject vehicle.

83. The nonconformities substantially impair the value of the Vehicle.

84. Plaintiff notified Dealer, verbally and in writing, that Plaintiff was revoking acceptance.

85. Despite receipt of Plaintiff's notices, Dealer failed to resolve Plaintiff's dispute.

WHEREFORE, SANDY L. KETCHEN, III, an individual, demands judgment for damages against Defendants, DRJ GAINESVILLE K, LLC, d/b/a JENKINS KIA OF GAINESVILLE, a Florida limited liability company, and ALLY FINANCIAL, INC., a Foreign Profit Company, jointly and severally, for the following:

A. Declaring acceptance has been properly revoked by Plaintiff and for damages incurred in revoking acceptance;

B. A refund of the entire purchase amount paid by Plaintiff for the subject vehicle;

C. Consequential, incidental and actual damages;

D. Costs, interest and attorneys' fees pursuant to 15 U.S.C. §2310(d)(2); and,

E. Such other relief this Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff, SANDY L. KETCHEN, III, an individual, pursuant to Rule 38(b), Federal Rules of Civil Procedure, demands a trial by jury of all issues so triable.

Dated: December 27, 2023

<u>/s/ Joshua E. Feygin</u>
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685

Email: Josh@sueyourdealer.com
**SUE YOUR DEALER – A LAW FIRM**
1930 Harrison St
208F
Hollywood, FL 33020
Tel: (954) 228-5674
Fax: (954) 697-0357
*Counsel for Plaintiff*